# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| BERTRAND GINES, | CASE NO. 09cv2866 JM(POR) |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR RELIEF FROM PROVISIONS OF GOVERNMENT CODE SECTION 945.4; GRANTING MOTION TO DISMISS |
| vs. | |
| SAN DIEGO METROPOLITAN TRANSIT SYSTEM; et al., | |
| Defendants. | |

Plaintiff Bertrand Gines moves to be relieved from strictly complying with the administrative exhaustion requirements of Cal. Gov. Code §945.4. Defendants San Diego Metropolitan Transit System ("SDMTS"), San Diego Trolley, Inc., San Diego Transit Corporation, and Michael Vaccariello (collectively "Moving Defendants") oppose the motion and separately move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss all six state law claims for failure to exhaust available administrative remedies.[1] Plaintiff opposes the motion to dismiss. Defendants Heritage Security Services, a.k.a. Transit Systems Security, and Albert Moya filed an answer to the complaint, (Docket No. 9). Defendants Richard Shirley, Robert Shipley, and Abaloyan Sabas did not file a response to either of the motions pending before the court. Pursuant to Local Rule 7.1(d)(1), both motions are appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion to be relieved from the

---

[1] SDMTS does not move to dismiss the federal civil rights claim.

exhaustion requirements of Cal. Gov. Code §945.4 and grants the motion to dismiss for failure to exhaust administrative remedies.

## BACKGROUND

On December 3, 2009, Plaintiff commenced an action in the Superior Court of California County of San Diego by alleging six state law claims for assault, battery intentional and negligent infliction of emotional distress, false imprisonment and conversion; and a single federal claim for violation of the Civil Right Act, 42 U.S.C. §1983.[2] Defendants SDMTS, San Diego Trolley, Inc., and San Diego Transit Corporation are public entities acting as transit authorities for the City of San Diego. (Compl. ¶2). Defendant Heritage Security Systems, a.k.a. Transit Systems Security, provides security related services and is a private California-based corporation allegedly acting as an agent of the City of San Diego. Defendants Albert Moya, Michael Vaccariello, Richard Shirley, Robert Shipley, Abaloyan Sabas are security officers employed by Heritage. (Id. ¶4). Moving Defendants timely removed the action on December 22, 2009.

Plaintiff's claims arise from an incident which occurred at about 9:00 p.m. on January 31, 2009, at the 24th Street Trolley Station parking lot located in National City, California. (Compl. ¶28). Plaintiff met a female companion at the Trolley Station and, as they were walking towards his car, they were approached by four officers, including defendant Officer Vaccariello. (Id. ¶29). The officers detained Plaintiff and questioned him about "what he was doing, who he was with and where he was going." (Id. ¶30). The officers refused to tell Plaintiff why he was detained and restricted his movements. (Id. ¶31). The officers threatened Plaintiff with the use of force if he would not cooperate. After about 45 minutes Plaintiff requested that he be permitted to leave and walked towards his car. Defendant Officer Moya allegedly "placed his hand on the gun at his hip as if he were going to remove it from its holster and fire at Plaintiff." (Id. ¶33). After about an hour of detention, Plaintiff called 911 for assistance. Officer Vaccariello then yelled at Plaintiff to put the phone away and then forcibly searched him before the National City Police Department responded to the 911 call. During the search of Plaintiff, the security officers removed his wallet and took it "to a place where Plaintiff could not observe what was being done." (Id. ¶36). When the National

---

[2] For purposes of these motions, the court accepts Plaintiff's factual allegations as accurate.

1  City Police arrived, "The security officers backed away from Plaintiff and started to exit the area in
2  which the assault took place." (Id. ¶38). The National City Police determined that there was no basis
3  to detain Plaintiff. Plaintiff then asked for the return of his wallet. The security officers returned the
4  wallet and Plaintiff noticed that the officers had removed $40 and a VISA credit card from the wallet.
5  (Id. ¶40). Before Plaintiff left the scene, Plaintiff was issued a Notice to Appear violation for loitering
6  and failure to comply with a lawful order. (Id. ¶41).

7  Shortly thereafter, on February 2, 2009 Plaintiff went to the offices of SDMTS to file a claim.
8  He was provided with a personnel complaint form, filled out the form, and was informed by a clerk
9  that "his claim was taken care of." (Id. ¶42).[3] Plaintiff called SDMTS on at least eight separate
10 occasions to check on the status of his complaint. Plaintiff never received a response to his complaint.
11 (Id. 45; Exh. A).

12 On March 25, 2009, Plaintiff appeared at the arraignment on the Notice to Appear where a trial
13 date of July 22, 2009 was set. (Id. ¶46). On July 22, 2009 Plaintiff appeared at the trial but "none of
14 the security guards appeared. The charges were dismissed." (Id. ¶47). Plaintiff alleges that he
15 believed "that his claim would be addressed at the trial on July 22, but there was no proceeding in
16 which he was able to ask about the status of the claim" (Id. ¶48). "On September 4, 2009 Plaintiff
17 resubmitted his claim" for damages [apparently, then initially represented by counsel]. (Id. ¶49; Exh.
18 B)[4]. On September 18, 2009, SDMTS denied the claim as untimely. (Id. Exh C). Plaintiff then
19 submitted a request for leave to present a late claim. On October 14, 2009, the request to submit a late
20 claim was denied. (Id. ¶50).

21 Plaintiff now moves to be relieved from the claims presentment requirement of Government
22 Code ¶945.4 and Defendants move to dismiss all state law claims for failure to comply with the claims
23 presentment requirements of the Government Claims Act.

24 ///
25 ///
26
27   [3] For some reason, Plaintiff dated the form "1-31-09."

28   [4] On this occasion, the proper document form for a damage claim was utilized and Plaintiff's claim was filed by an attorney.

# DISCUSSION

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, __550 U.S. __, 127 S.Ct. 1955 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949.

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**Exhaustion of Administrative Remedies**

The parties dispute whether Plaintiff substantially complied with the exhaustion requirements of Government Claims Act §810 et seq. and, if not, whether Plaintiff should be relieved from complying with the Government Claims Act.

Under the Government Claims Act, "no suit for 'money or damages' may be brought against a public entity until a written claim has been presented to the entity and the claim either has been acted upon or is deemed to have been rejected. Gov't Code §§ 905, 945.4. Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan, 150 Cal.App.4th 1487, 1493 (2007). The exhaustion requirement applies to all actions seeking monetary relief. Sparks v. Kern County Bd. Of Supervisors,

1  173 Cal.Appp.4th 794, 798 (2009). Accordingly, the claims presentation requirement applies to all
2  forms of monetary demands, regardless of the theory of the action. <u>Hart v. County of Alameda</u>, 76
3  Cal.App.4th 766, 778-79 (1999). The failure to timely present a claim for money or damages to a
4  public entity bars the plaintiff from bringing suit against that entity. <u>City of Stockton v. Superior</u>
5  <u>Court</u>, 42 Cal.4th 730, 738 (2007).

6        The claim-filing requirement of the Government Claims Act "serves several purposes: (1) to
7  provide the public entity with sufficient information to allow it to make a thorough investigation of
8  the matter; (2) to facilitate settlement of meritorious claims; (3) to enable the public entity to engage
9  in fiscal planning; and (4) to avoid similar liability in the future." <u>Westcon Const. Corp. v. County</u>
10 <u>of Sacramento</u>, 152 Cal.App.4th 183, 200 (2007) (quoting <u>TrafficSchoolOnline, Inc. v. Clarke</u>, 112
11 Cal.App.4th 736, 742 (2003)).

12 <u>Substantial Compliance</u>

13       Government Code § 910 prescribes the essential contents of a claim: the information includes
14 the circumstances of the occurrence or transaction that gave rise to the claim asserted; a general
15 description of the indebtedness, obligation, injury, damage or loss incurred so far as may be known;
16 and either the claimed amount if less than $10,000, or if the claimed amount exceeds $10,000, whether
17 the claim would be a limited civil case. Gov't Code §910. "Where a claimant has attempted to
18 comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial
19 compliance may validate the claim 'if it substantially complies with all of the statutory requirements
20 ... even though it is technically deficient in one or more particulars.'" <u>Sparks</u>, 173 Cal.App.4th at 798
21 (quoting <u>Connelly v. County of Fresno</u>, 146 Cal.App.4th 29, 38 (2006). Stated another way, "in order
22 to determine whether a claimant has substantially complied with the Government Claims Act, ' two
23 tests shall be applied: Is there some compliance with all of the statutory requirements; and, if so, is
24 this compliance sufficient to constitute substantial compliance?'" <u>City of San Jose v. Superior Court</u>,
25 12 Cal.3d 447, 456-457 (1974); <u>Westcon Const. Corp. v. County of Sacramento</u>, 152 Cal.App.4th 183,
26 200 (2007).

27       The court concludes that the February 2, 2009 complaint form with attachment letter presented
28 to SDMTS, (Compl. Exh. A), fails to show adequate compliance with respect to all of the statutory

1  requirements. The form document submitted by Plaintiff indicates a box checked as a "Personnel
2  Complaint," and incorporates a lengthy statement of the events that occurred on the evening of
3  January 31, 2009. Id. Plaintiff checked many of the boxes calling for information concerning the
4  complaint but did not respond to the question of whether he sustained personal injury or property
5  damage. Moreover, the "brief description" portion of the statement fails to provide a "general
6  description of the indebtedness, obligation, injury, damage or loss" as required by Gov't Code
7  §910(d). As noted by SDMTS, the document submitted by Plaintiff challenges the conduct of the
8  officers in detaining him and appears to have been filed for the purpose of having the SDMTS take
9  corrective action. The February 2, 2009 statement did not request monetary relief and failed to put
10 SDMTS on notice that there was in fact (1) any claim to settle, (2) any claim that could impact
11 SDMTS's fiscal planning; and (3) any claim requiring SDMTS action to avoid similar liability in the
12 future. See Westcon, 152 Cal.App.4th at 200. In Tyus v. City of Los Angeles, 74 Cal.App.3d 667,
13 672 (1977), the Court of Appeal concluded that the plaintiff's failure to indicate that he is making a
14 claim for monetary damages in a letter critical of official misconduct is a debilitating defect because
15 a monetary claim is an essential element of a Government Code §910 claim. Here, the failure of
16 Plaintiff to effectively communicate that he was making a claim for monetary relief is fatal to
17 Plaintiff's substantial compliance argument.

18      Plaintiff also argues that Defendants "waived the defense that the claim was deficient because
19 they failed to give Mr. Gines notice of any deficiency in the claim." (Motion at p.9:15-16). Plaintiff
20 reasons that Defendants were under a duty to inform him that the February 2, 2009 document he
21 provided to SDMTS was defective. Under California law, a "public entity's receipt of written notice
22 that a claim for monetary damages exists and that litigation may ensue places upon the public entity
23 the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to Government
24 Code sections 910.8 and 911 of the defects that render the document insufficient." Westcon Const.
25 Corp. v. County of Sacramento, 152 Cal.App.4th 183, 202 (2007). Here, SDMTS was never under
26 a duty to inform Plaintiff of the defects contained in the February 2, 2009 "personnel complaint"
27 because it is not a claim for monetary damages within the meaning of California law nor did it place
28 SDMTS on notice that litigation would ensue. Consequently, this argument is not persuasive.

In sum, the court finds that Plaintiff failed to substantially comply with Gov't Code §910.

<u>Excusable Neglect</u>

Under the Government Claims Act, a person claiming to have been injured by the acts and omissions of a local public entity or its employees must file a claim with the entity not later than six months after the accrual of the cause of action. Gov. Code, § 911.2. Presentation and rejection of a claim are conditions precedent to the bringing of a suit for money or damages against the entity. § 945.4. If the person fails to present a timely claim, a written application for permission to file a late claim must be presented to the entity. § 911.4. If the application is denied, or if after 45 days the entity has failed to act on the application, § 911.6, then the person may file a petition in the appropriate court for relief from the claim filing requirements. § 946.6. The court shall relieve the petitioner from the claim presentation requirements if: (1) the application to file the late claim was made within a reasonable period not to exceed one year following the accrual of the cause of action, §911.4(b); and (2) the failure to present the claim was through mistake, inadvertence, surprise or excusable neglect, unless the public entity establishes it would be prejudiced in the defense of the claim if the court grants petitioner relief. § 946.6(c); <u>Ebersol v. Cowan</u>, 35 Cal.3d 427, 430-31 (1983). Once Plaintiff establishes excusable neglect, SDMTS has the burden to establish prejudice. <u>Tammen v. County of San Diego</u>, 66 Cal.2d 468, 478 (1967).

Here, the record establishes that Plaintiff's late submission of his September 4, 2009 claim for damages occurred within one year after the accrual of the cause of action; thus satisfying the first requirement for relief. Plaintiff also argues that his conduct establishes excusable neglect: he reasonably believed that the personnel complaint document submitted by him provided notice of the potential claim to Defendants; he called SDMTS on at least eight separate occasions to follow-up on the complaint; after each telephonic inquiry he was told by unidentified individuals that he would receive a response in the mail and he never received a response; he delivered a copy of the complaint to the security company located across the street from SDMTS; he appeared at the time of the Notice to Appear on July 22, 2009 believing that he would have an opportunity to address his civil claim at the time of the trial; he appeared at July 22, 2009 trial in order to confront the security guards and to have the opportunity to follow-up on his civil claim; he was unaware of the California Claims Act and

1  the time requirements for submitting an administrative claim; and he reasonably, but mistakenly,
2  waited until after the July 22, 2009 hearing to contact an attorney because he thought that his claims
3  "would be heard by the judge at the time of his scheduled court hearings. (Gines Decl. ¶¶16-26).

4  Plaintiff argues that this case is similar to Ebersol v. Cowan, 35 Cal.3d 427.  There, the
5  plaintiff bus driver was injured when bitten by a student passenger.  Ebersol immediately began
6  contacting attorneys about asserting a claim against the school district regarding her injuries.
7  Ultimately she contacted nine separate attorneys before being informed that she likely had a valid
8  claim against the school district.  Based upon the advice obtained from the last attorney, she filed her
9  administrative claim about four months late.  Ebersol then sought relief from the claims filing
10 requirements pursuant to Gov't Code §946.6.  Ebersol set forth her numerous attempts to locate
11 representation and declared that she had no prior experience with the courts or claims for personal
12 injuries, she was ignorant of the law relating to administrative claims, and she was unaware that she
13 had a potential claim until she was informed by the ninth and last attorney she consulted about
14 representation. Id. at 434.  The trial court denied the motion.

15 The California Supreme Court reversed, noting that "in general, cases granting relief on the
16 basis of excusable neglect involve plaintiffs who acted diligently to retain counsel within [six month]
17 limitation period."  35 Cal.3d at 435.  Conversely, the "cases denying relief under section 946.6
18 involve situations where the plaintiff failed to take any action whatsoever in pursuit of his or her claim
19 within [six months] after the accrual of the cause of action; cases where the conduct of plaintiff's
20 retained counsel was clearly unreasonable or inexcusably dilatory; and cases in which there was
21 simply no competent evidence before the trial court which it could exercise its discretion." Id. at 436-
22 37.  The determinative factor relied upon the Supreme Court was Ebersol's swift action to "place her
23 case in the hands of an attorney on the very day she was injured." Id. at 437.  The Supreme Court
24 determined that  Ebersol's "efforts to obtain counsel during the [six month] limitation period were
25 both tenacious and diligent." Id.

26 Here, the record fails to show that Plaintiff made any attempt to seek legal representation
27 during the six-month limitations period.  This circumstance alone distinguishes Ebersol from the case
28 at bar.  As the court noted in People ex rel. Dep't of Trans. v. Superior Court (Ilsenhower). 33

Cal.App.4th 39 (2003):

> The law neither expects nor requires an unsophisticated claimant to undertake an in-depth investigation into the possible liability of public entities, or to be aware of the peculiar time limitations of the governmental claims statutes. However, California cases are uniformly clear that 'a petitioner may not successfully argue excusable neglect when he or she fails to take any action in pursuit of the claim within the six-month period. The claimant must, at a minimum, make a diligent effort to obtain legal counsel within six months after the accrual of the cause of action. Once retained, it is the responsibility of legal counsel to diligently pursue the pertinent facts of the cause of action to identify possible defendants.

Id. at 44-45; Harrison v. County of Del Norte, 168 Cal.App.3d 1, 8 (1985) (to obtain relief under §946.6 the claimant must, at a minimum, make a diligent effort to obtain legal counsel within the time period required to file the claim).

While Plaintiff cites numerous circumstances which he argues favor relief (inexperienced in the law, ignorance of the law regarding administrative exhaustion procedures, the filing of the personnel complaint, his appearance at the time of the criminal hearings; and Plaintiff's conduct in following up with SDMTS), these circumstances are insufficient to tip the scale in his favor. As already noted, diligence in securing counsel, so important for the Ebersol court, was not exercised at all by Plaintiff, herein, within the six-month limitations period. Moreover, a fair reading of the personnel complaint filed by Plaintiff on February 2, 2009, as well as his long narrative attached to that complaint reveals only that Plaintiff sought corrective action by SDMTS so as to protect the public from similar treatment in the future. Plaintiff threatened to take the matter "higher up" (presumably within SDMTS) or to the "Turko Files,"[5] not to an attorney to pursue a claim for damages. Moreover, although Plaintiff telephonically checked the status of his complaint with SDMTS, there is no evidence that he ever informed the agency that his complaint was, in essence, a claim for damages. Finally, if inexperience with the law and the claim filing requirements, combined with one's determination to contest a criminal citation were accorded substantial weight in an effort to avoid application of the claim requirements, the claim requirements would be relegated to claim suggestions.

This evidentiary record does not support the proposition that Plaintiff had the initial intention

---

[5] The "Turko Files" consist of a local television segment hosted by Michael Turko, a public advocate, who does human interest stories, including stories where people have been hurt or taken advantage of.

of pursuing this matter as a claim for damages. This observation is buttressed by the fact that Plaintiff, presumably sophisticated as an "Operations Manager" for a private security firm, (Plaintiff's Decl. ¶ 9), expected he could reach a "resolution" of the matter by speaking to a SDMTS supervisor on February 2, 2009 (id. ¶12) or by confronting the security guard at his July 22, 2009 criminal hearing.[6] It was not until after the dismissal of Plaintiff's loitering citation on July 22, 2009 that Plaintiff apparently decided to pursue a damage claim and ultimately retained counsel who submitted a claim for damages with SDMTS on September 4, 2009. The weight of the evidence discloses no mistake, inadvertence, surprise or excusable neglect on the part of Plaintiff. Rather, Plaintiff appears to have recalibrated his litigation posture based upon the apparent insouciance of SDMTS regarding Plaintiff's personnel complaint and the dismissal of the loitering matter. In so doing, Plaintiff is now attempting to transform a personnel complaint into an individual claim for damages upon the hypothesis that he was misled by SDMTS.

Even assuming, however, SDMTS was cavalier in its response to Plaintiff's personnel compliant, it was under no obligation to divine Plaintiff's asserted intent to seek damages rather than to lodge a citizen's complaint for corrective action. Therefore, Plaintiff's claim for relief from the filing requirements on the grounds proffered is denied.

In sum, the court denies the motion to be relieved from the provisions of Govt Code §945.4 and grants the motion to dismiss the state law claims for failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

DATED: February 18, 2010

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:        All parties

---

[6] Plaintiff further asserts, in his declaration that on February 2, 2009 he approached some security guards after leaving the SDMTS office in an effort to resolve the matter. When his account was met with laughter, Plaintiff was insulted.